Bronson C. Rumsey et al., Appellants, *v.* George D. Briggs et al., Respondents.

Where the purchase of real estate is within the scope of a partnership business, which one of two copartners is permitted by the other to manage and transact in his own name, and the latter borrows money or procures indorsements on the credit of the firm to make such a purchase, it will be bound by the act, although he took title in his own name.

In an action upon a promissory note, signed by defendant B., defendant M. was sought to be charged as a partner. It appeared that defendants were copartners, under the firm name of B. & Co. The partnership agreement was in writing, which stated the firm business to be the manufacturing and selling of lumber, bark, etc., upon a tract of land specified and "also upon any other tract of land which shall be purchased by said copartners," as provided. M. took no active part in managing the business. B. was the financial and business manager. · The name of B. was used, with the consent of both partners, in making notes and procuring them to be discounted for the transaction of the firm business, and in that name firm property was sold, checks drawn and deposits made. The tract of land specified having become nearly exhausted, the partners consulted in reference to the purchase of another tract, but before a conclusion was reached M. went abroad. During his absence B. completed the purchase, paying a sum down which was raised upon notes, of one of which, the note in suit, was a renewal. M., on his return, was informed of the purchase, and consented to take a half interest in the property, and thereafter the partnership business was carried on by using the land, taking timber therefrom, .etc. Plaintiffs, knowing that defendants were copartners, indorsed the note in suit in reliance upon the statement of B., that M. had authorized the purchase, and upon the credit and responsibility of both. B. thereafter failed; until that time M. had no knowledge of the giving of the original note or the renewals. *Held*, that the signature of the note was properly held to be that of the firm; that the purchase of the land and the giving of the note were within the apparent scope of the firm business; that M. was bound by the representations of B., also that the facts showed a ratification by M. of the purchase; and so, that he was liable.

The appeal was on the judgment record alone; it did not appear thereby that there was any limitation in the partnership agreement upon the words quoted as to subsequent purchases of land. *Held*, that it could not be assumed that the general powers to be implied from the provision, were regulated, limited or restricted by some subsequent provision, or otherwise.

*Rumsey* v. *Briggs* (63 Hun, 11), reversed.

(Argued June 26, 1893; decided October 3, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 22, 1892, which affirmed a judgment in favor of defendant Marshall entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ansley Wilcox* for appellant. Upon the facts found by the referee, the plaintiffs were entitled to recover on this note against both of the defendants as copartners, and his decision dismissing the complaint was erroneous. (*Crocker* v. *Colwell,* 46 N. Y. 212; *N. Bank* v. *Thomas,* 47 id. 15; *O. Bank* v. *Hennessey,* 48 id. 545; *Williams* v. *Gillies,* 75 id. 197, 203; Lindley on Part. 112, 180–191; Daniels on Neg. Inst. §§ 360–364.) Marshall's answer does not allege that the note was made by Briggs without authority, or was beyond his actual or apparent powers. It does not raise this issue. (*Johnston* v. *Trask,* 116 N. Y. 136; *U. N. Bank* v. *Underhill,* 102 id. 339.) The transaction of acquiring additional hemlock timber land to carry on the firm's business, and of borrowing money on the credit of the firm to assist in paying for and developing the land, was within the actual authority of Briggs, as managing partner. (*R. L. Co.* v. *S. P. Co.,* 135 N. Y. 209; Lindley on Part. 128, 167, 168; Pars. on Part. 93–95, 134, 170; *U. N. Bank* v. *Underhill,* 102 N. Y. 336; Whart. on Ev. § 1194; *Chester* v. *Dickerson,* 54 N. Y. 1; *Johnston* v. *Trask,* 116 id. 136.) Whether or not this transaction was within the actual authority of Briggs, as the managing partner, it was within his apparent or ostensible authority, as being apparently a natural and necessary incident in the prosecution of the business of the firm. (*U. N. Bank* v. *Underhill,* 102 N. Y. 340; Pars. on Part. [2d ed.] 116.) Whether or not Briggs had authority at the outset, as between himself and Marshall, to enter into this undertaking and to bind the firm in connection with it, Marshall ratified his purchase of the land after it was laid before him, and also ratified his act in making this note to raise money, by accepting the proceeds of

the note and treating them as firm moneys in his settlement with Briggs. (*Bennet* v. *Judson*, 21 N. Y. 238 ; *Elwell* v. *Chamberlain*, 31 id. 611 ; *Leslie* v. *Wiley*, 47 id. 648 ; *Garner* v. *Mangram*, 93 id. 642.)

*George Clinton* for respondents. There having been no case made and the evidence, therefore, not being before this court, the referee's findings of fact are conclusive, and this court must presume that the evidence was sufficient to support any other findings of fact which may be necessary to sustain the findings of law. (*Tomlinson* v. *Mayor, etc.*, 44 N. Y. 601 ; *Gardiner* v. *Schwab*, 110 id. 650 ; *Burrows* v. *Dickinson*, 115 id. 672.) The act of Briggs in signing the note was not a partnership transaction, and was not binding upon Marshall. (Daniel on Neg. Inst. § 363 ; *M. & M. Bank* v. *Winship*, 5 Pick. 11 ; *U. S. Bank* v. *Binney*, 5 Mason, 176 ; *Strauss* v. *Waldo*, 25 Ga. 641 ; *Burroughs' Appeal*, 26 Penn. St. 264 ; *M. Bank* v. *Cox*, 38 Me. 500 ; *Irwin* v. *Williar*, 110 U. S. 499 ; *Dowling* v. *N. E. Bank*, 145 id. 514 ; *E. N. Bank* v. *Marshall*, 56 Hun, 643.) Marshall was not bound by any representations that Briggs may have made to the plaintiffs in obtaining their credit to enable him to raise money to purchase the Rock Run tract. (Lindley on Part. 165, 167, 168, 169 ; *U. N. Bank* v. *Underhill*, 102 N. Y. 336 ; *Johnston* v. *Trask*, 116 id. 136, 142 ; *Rogers* v. *Murray*, 110 id. 658.) There was no ratification by Marshall of Briggs' acts or representations in obtaining the credit of the plaintiffs' firm, to enable him to raise money to purchase the Rock Run tract. (*Baldwin* v. *Burrows*, 47 N. Y. 199 ; *C. C. S. Bank* v. *Walker*, 66 id. 424, 429 ; *Smith* v. *Kidd*, 68 id. 130, 142 ; *King* v. *Mackellar*, 109 id. 215, 223.) The plaintiffs' exceptions to the referee's findings of fact and to his refusals to find as requested, cannot avail them on this appeal. (*Porter* v. *Smith*, 35 Hun, 118 ; 107 N. Y. 531.)

O'BRIEN, J. This action was upon a promissory note of $5,000 against the defendants as partners. The appeal is from

a judgment of the General Term affirming a judgment on the report of a referee dismissing the complaint as to the defendant Marshall, and is based upon the judgment roll alone, there being no dispute as to the facts. The question is whether upon the facts found by the referee a defense was established.

The following is a copy of the note :

"$5000.                              BUFFALO, *Oct.* 22, 1888.

"One month after date I promise to pay to the order of A. Rumsey & Co. five thousand dollars at Manufacturers and Traders Bank, value received.          G. D. BRIGGS."

This note was one of several renewals of another of the same tenor and amount, dated March 5, 1888, which the plaintiffs, constituting the firm of A. Rumsey & Co., indorsed, as they claim, for the defendants. The note in suit was discounted at the bank, and not having been paid when it became due, was protested and the plaintiffs made liable thereon to the holder as indorsers. They subsequently paid the note, and in this action seek to collect from the makers. It is found, and there was no dispute as to that fact, that at the time the original note was made and all the renewals, including that in suit, the defendants were partners.

The partnership agreement was in writing, and the firm business was manufacturing and selling lumber, bark, railroad ties, and all other business relating thereto, under the firm name of George D. Briggs & Co., upon a tract of land in Pennsylvania known as "Fair Run," and "also upon any other tract of land which shall be purchased by said co-partners as hereinafter provided." The defendant Marshall was a practicing lawyer and took no active part in the management of the business. Briggs was the financial and business manager, giving to the business in all its details his personal attention. The firm name of G. D. Briggs was adopted with the consent of both partners in making notes and procuring them to be discounted for the transaction of the partnership business, and in that name, with like consent, firm property was sold, checks drawn on the funds of the firm in banks and deposits made.

Prior to the month of January, 1888, the "Fair Run" tract, from which the firm had obtained the lumber and timber, became substantially exhausted of its bark and timber. About that date the defendants had a consultation looking to the purchase of another tract of about two thousand acres known as the "Rock Run" tract, situated near their sawmill on the old tract, but no conclusion was reached. On the 3rd of March, 1888, and while the defendant Marshall was in Europe, Briggs made a written contract with one Bouton, by which the latter was to purchase the Rock Run property and convey it to the former, and this agreement was executed by a conveyance by the owners to Bouton and subsequently by him to Briggs. The property cost about $30,000, and Briggs paid, upon taking the title, about $22,000. This sum was all substantially raised upon notes, one of which was the original of the note in suit, leaving about $8,000 still due. In the meantime and about May 1, 1888, the defendant Marshall returned from Europe, was informed by Briggs of the purchase and the amount still due, was asked to take a half interest in the property at the price paid, to which he consented. Both partners then arranged to borrow of a third party $20,000, to be secured by mortgage on the land. Briggs having procured the title, executed the mortgage and then conveyed an undivided half to his partner. From the money raised on the mortgage, the balance of the purchase price was paid and, by consent of both partners, about $9,000 of it was used to pay off and discharge another mortgage on the "Fair Run" property which they owned as partners. The balance of the loan was credited to Briggs, and thereafter they carried on their partnership business by using the land and taking the timber therefrom. Otherwise than thus described, Marshall never paid or advanced anything individually upon the land, Briggs becoming personally liable for the payment of the loan, while his partner did not. Mr. Marshall was notified by Briggs of the purchase about the time it was made by letter addressed to him at Paris, which was received but no reply made thereto. The referee found that the signature to the note was

that of the partnership.   The plaintiffs' firm was engaged in
the business of manufacturing leather and used large quanti-
ties of bark in their business, a portion of which they had
purchased prior to the transaction in question from the defend-
ants through Briggs.   One of the members of the firm, at
least, knew that defendants were partners, and he was the
person who indorsed the note in the name of the firm.   On
the 5th of March, 1888, Briggs, desiring to raise money or
procure credit to purchase the land, applied to this member of
the plaintiffs' firm to advance the money or to indorse a note
upon which money could be raised, to be used in the business
of the defendants' firm.   Briggs stated to the plaintiffs that
he had an opportunity to purchase the land and desired to do
so for his firm.   That Mr. Marshall was absent, but had
authorized the purchase, and, as he could not communicate
with him in time, he desired then to close up the transaction,
as it was necessary to proceed at once with their business, and,
if he could complete the purchase, he would make a large
contract with the plaintiffs for the bark.   Believing and rely-
ing upon these statements, and without knowledge as to the
actual name of defendants' firm, the plaintiffs indorsed the
note upon the credit and responsibility of the defendants.   In
November, 1888, Briggs failed, being insolvent, and it is
found that Mr. Marshall had, in fact, no knowledge of the
giving of the original note or renewals till that time.   Other
facts are found, and there are various requests for findings by
both sides in the record, but it is believed that it is not neces-
sary to refer to them in greater detail, as sufficient now
appears to give a clear view of the legal question, upon the
disposition of which the case depends.   The learned referee
held as matter of law that neither the original note nor any
of the renewals were firm obligations and were not within the
actual or apparent scope of the business of defendants' firm,
and, developing this idea still further, held that the purchase
of the tract of land by Briggs was not within the actual or
apparent scope of the business of his firm, and that the
defendant Marshall was not bound by any of the representa-

tions made to the plaintiffs in relation to the purposes for which the note was given, and dismissed the complaint.

We think that this conclusion could not legally or properly follow from the facts found, and was, therefore, erroneous. (*R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209.)

The general authority and agency of Briggs, as a partner, coupled with the other fact, that, with the knowledge and consent of his co-partner, he was accustomed to transact the firm business in his own name, to make and discount firm notes and draw upon their proceeds in the same way for partnership purposes, conferred power upon him to make obligations and contracts binding upon the firm in his individual name, and it is conceded that the promise sued upon is, at least in form, that of the partnership. The plaintiffs have been defeated upon the ground that, though it is a firm note, it was not given in the firm business or within the actual or apparent scope of the agent's authority, because the purchase of an additional tract of land was not a partnership act, but that of Briggs individually.

The partnership agreement provides for operations on a designated tract of land and " *upon any other tracts of land which shall hereafter be purchased by said co-partners, as hereinafter provided.*" Therefore, the purchase of more land, when necessary, was contemplated as a part of the business and as a partnership act. In the absence of a finding we cannot, upon an appeal on the judgment record alone, assume that the general powers to be implied from this provision of the agreement, were regulated, limited or restricted by some subsequent provision, in the same instrument or otherwise, (*R. L. Co.* v. *S. & P. P. Co., supra.*) Considering the circumstances that appear in this case, the fact that the timber on the old tract was exhausted, that the purchase of more land was the subject of consultation between both partners, before one of them went to Europe, that Briggs had been permitted by the other partner to transact the business in his individual name, we think that the purchase of the land when the other partner could not be communicated with, was a partnership

act fairly within the actual and apparent scope of the agency. It seems quite clear, upon the facts, that the absent partner could have claimed the benefit of the transaction and could have compelled Briggs to account to the firm for the property or its proceeds or profits. Briggs was the general manager, with full charge of the business as well as a partner. His individual name was made by usage and consent to represent the firm. The purchase of more land was within the general purpose and object of the partnership when necessary, and of that he was to be the judge. The making of the note and procuring the plaintiffs to indorse it upon the faith and credit of the firm in order to raise money to pay the purchase price, was a necessary and usual step in the acquisition of the property. The power of Briggs to bind the firm by the note in suit, under the circumstances disclosed, is but a fair deduction from the general principles of law applicable to the powers of individual partners and the cases on the subject. (Lindley on Part. 128, 129, 130, 131, 144, 146, 167–8; Parsons on Part. 94, 95, 170–2, 197–8; *Chester* v. *Dickerson*, 54 N. Y. 1; *Johnston* v. *Trask*, 116 id. 136; *Union National Bank* v. *Underhill*, 102 id. 336; *Dowling* v. *Exch. Bank*, 145 U. S. 512.)

When the purchase of a piece of real estate is within the scope of the partnership business, which one of the partners is permitted by the other to manage and transact in his own name, and the latter borrows money or procures indorsements from third parties in order to pay for the real estate on the credit of the firm, it will be bound by his act, though he takes the title in his own name.

But if the power to bind the firm by the transaction in which the note originated is considered in any degree doubtful, then it was competent for the other partner to ratify what had been done in the name of the firm, and in that way to make the note binding upon both partners, and such, we think, is the legal result from the facts found. Marshall, on being informed of the purchase on his return from abroad, in effect, consented to treat the land as partnership property the

same as the old tract, and took a conveyance of an undivided half interest. The finding is that Briggs informed Marshall of the conditions of the contract and the state of the title, which was still in a third party, and proposed that they become the owners of the land as partners and operate the same under their existing partnership agreement, to which Marshall consented. Then the title was transferred to Briggs, who, by arrangement with his co-partner, mortgaged it in order to raise $20,000, $8,000 of which was used to pay the balance of the purchase price, about $9,000 more to pay a partnership debt, namely, a mortgage on the old tract, and the balance credited to Briggs in the firm account. Thus property of the value of $30,000, or at least which was purchased at that price, was transferred by Briggs to the firm, subject to an incumbrance of $20,000. If it had been an individual and not a partnership transaction he would have been entitled to the difference of $10,000 and the fruits of the loan made upon its security, less the balance of the purchase price, but upon the supposition that it was a partnership affair, the disposition made of these funds was in harmony with the object and purpose of the parties.

The finding of the referee that after all this Marshall was not aware of the giving of the note, of which the one in suit is a renewal, is quite immaterial. Knowledge of all the details was not necessary, but it must be assumed that he knew Briggs had raised money in some way to pay $22,000, and he certainly knew that his practice had been to raise money on notes, in precisely the same form, for the use of the firm. Under these circumstances his adoption of the transaction and acceptance of the fruits of it, bound him and the firm.

Where a principal adopts and ratifies the acts of his agent by receiving the fruits of it or otherwise, he assumes responsibility for the instrumentalities which the agent has employed in his behalf to effect the contract. (*Bennett* v. *Judson*, 21 N. Y. 238; *Elwell* v. *Chamberlin*, 31 id. 611; *Leslie* v. *Wiley*, 47 id. 648; *Garner* v. *Mangam*, 93 id. 642.)

For these reasons the judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except Andrews, Ch. J., and Finch, J., not voting.

Judgment reversed.