MILLER v. McCORD et al.

(Court of Civil Appeals of Texas. Dallas. June 21, 1913.)

1. PARTNERSHIP (§ 142*)—POWERS OF PARTNERS—RIGHT TO BORROW MONEY.

Members of a trading partnership may borrow money in the firm name for firm purposes, and pledge firm property, and draw, negotiate, accept, or indorse bills of exchange or notes, but the members of a nontrading partnership usually defined to be a partnership limited to a single enterprise, and not engaged in business, have no implied authority to borrow money and bind the firm therefor by notes given in its name, or to pledge the assets of the firm as security for money borrowed, in the absence of proof of actual necessity or usage for the exercise of the power by the individual members of the firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 222–228; Dec. Dig. § 142.*]

2. PARTNERSHIP (§ 146*) — POWERS OF PARTNERS.

A partner in a trading firm who borrows money professedly for the firm, and executes therefor a negotiable instrument in the firm name, thereby binds all the partners whether the borrowing was for the firm or not, and whether he misapplied the funds or not, provided the lender was not cognizant of the intended fraud.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 242–251, 253–255; Dec. Dig. § 146.*]

3. PARTNERSHIP (§ 136*)—CONTRACTS—LIABILITY OF FIRM.

To bind a firm by a contract, it is not essential that the contract be signed by all the partners or in the firm name, and, where it is signed by a partner having authority to bind the firm and the contract is so accepted and credit is extended thereon, the firm is bound thereby.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 203, 204, 240; Dec. Dig. § 136.*]

4. PARTNERSHIP (§ 131*)—POWERS OF PARTNERS—RIGHT TO BORROW MONEY.

Where a partner in a firm, formed to undertake specified city work, agreed that a partner should finance the enterprise, and should have the entire financial management of the firm business, and it was actually necessary for him in behalf of the firm to obtain credit and borrow money and give security therefor, the partner had authority to borrow money, and give security therefor.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 131.*]

5. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CASE ON APPEAL.

Where a case was fully developed, the court on appeal from an erroneous judgment will render the proper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by A. D. McCord against J. A. Hieatt and others. From the judgment rendered, defendant W. F. Miller appeals. Affirmed in part, and reversed and rendered in part.

Seth Shepard, Jr., of Dallas, for appellant. J. J. Collins, Lee Richardson, and Wendell Spence, all of Dallas, for appellee.

TALBOT, J. On September 7, 1910, A. D. McCord filed suit against J. A. Hieatt, W. F. Miller, and the city of Dallas, alleging: That in the year 1910 he, the said McCord, and J. A. Hieatt formed a nontrading partnership for the purpose of undertaking the work of clearing the White Rock Reservoir site owned by the city of Dallas. That to this end the partnership of McCord & Hieatt entered into a written contract with the city of Dallas, under which the said firm was to furnish all tools, labor, materials, and supplies at their own expense, and cut the timber from and clear said reservoir site. That performance under this contract was begun by the contractors, who had first arranged for a supply of funds from a Dallas bank, and continued until the said bank failed to advance the money as it had agreed, when the work ceased, and was abandoned by the contractors. At this time McCord & Hieatt had cut the timber from about 150 acres of the land designated, but had not cleared that land of the brush and débris as stipu-

lated in the contract, and the city of Dallas declared the contract forfeited. Plaintiff further alleged that said Hieatt was converting to his own use the wood that had already been cut from the reservoir site; that such wood, he was advised by counsel, was the property of the city of Dallas under the terms of the contract, and not the property of the contractors, who had failed in their performance of the said contract with the city, and that said wood so cut constituted and should be held as a fund for the benefit of the city of Dallas which had been occasioned loss by the said contractor's failure to complete performance of the said contract; that said Hieatt had mortgaged a large quantity of the said wood to defendant W. F. Miller to secure an alleged indebtedness to said Miller; that the partnership of McCord and Hieatt was a nontrading partnership, and that Hieatt had not the legal authority so to dispose of said wood. The plaintiff McCord prayed for a dissolution of the partnership, the annulment of Miller's mortgage, and that Hieatt & Miller be restrained by injunction from disposing of said wood, and finally that a receiver be appointed to take possession of the same, holding the same as a fund to be distributed under the order of the court after final hearing. Defendant Hieatt answered by general denial, and specially denied that he and McCord formed a nontrading partnership. He alleged that he only entered into an agreement with McCord to form a partnership to undertake the work of clearing the reservoir site, by the terms of which contemplated partnership each partner was to furnish an equal amount of money, and Hieatt was to have the sole management and control of the business and of the disposition and disbursement of all moneys, and the sale, incumbrance, and removal of all wood cut from the reservoir site; that because of McCord's failure to abide by the terms of this agreement Hieatt declared such agreement at an end; that Hieatt borrowed $1,300 from defendant Miller, giving the latter a chattel mortgage on the wood then lying cut or stacked on the reservoir site, and that the money so borrowed was used in paying for labor used in clearing the said reservoir site. Hieatt further alleged that the wood cut was cut and removed according to the terms of the contract, and under the direction of the city engineer and with his approval, and the defendant Hieatt thereupon asked that the temporary injunction be dissolved. A hearing was had before the court on September 10, 1910, and the court appointed G. L. Ford receiver of the said partnership, and the receiver under order of the court sold the wood and charcoal and returned into court the net sum of $2,371.21, where it still remains. Before the final hearing was had, the city of Dallas answered by alleging that the said contract was never performed by the firm of McCord & Hieatt, but was by them abandon-

ed; that the contract was relet to another contractor, and that by reason of the failure of said McCord & Hieatt to perform the said contract the city of Dallas suffered the net sum of $7,345.96 damages; that the city of Dallas owned and still owns the wood cut from the reservoir site by the said contractors, and that title to said wood never passed to the latter, but always remained in the city of Dallas because of the failure of the said McCord & Hieatt to perform the said contract with the city of Dallas. The said city thereupon prayed for an order directing that all the money in the hands of the receiver be paid to the city of Dallas as a credit on its claim of $7,345.96 against said McCord & Hieatt, and that it have judgment for the balance. Defendant W. F. Miller answered by general denial, and also specially alleged that on May 21, 1910, and prior thereto, defendant Hieatt was the managing partner of the firm of McCord & Hieatt, which firm had contracted with the city of Dallas to clear the White Rock Reservoir site; that by agreement between Hieatt and his partner, McCord, the former was clothed with the entire management of the finances of the firm, of its books and office business, and with the payment and settlement of its debts, and with full authority to borrow money in his individual capacity for the use of the firm in the performance of the contract with the city, and to execute in the same manner notes and mortgages securing the same, binding on the firm and on the firm property; that on May 21, 1910, the said Hieatt and A. D. McCord were indebted to defendant Miller in the sum of $1,000 evidenced by a note for that amount, dated May 21, 1910, and payable on demand to the order of W. F. Miller; that this note was signed and executed by J. A. Hieatt alone, but that it was executed by him for and in behalf of the firm and with the knowledge and authority of McCord; that, therefore, McCord & Hieatt became bound to defendant Miller for the amount of the note, interest, and attorney's fees stipulated therein; that said note was secured by a chattel mortgage on 4,300 cords of wood cut and lying stacked on the said reservoir site, said wood being that which was cut under the said contract with the city; that said mortgage was executed on the same day and in the same manner as the note which it secured. Defendant Miller further alleged that he advanced the firm an additional $300, which was evidenced by a note for that amount, dated, due, and payable and executed in the same manner as the note for $1,000, whereby the said firm became bound to him for that amount; that for the securing payment of the note for $300 the defendant Hieatt agreed to give to defendant Miller for and in behalf of the said firm a chattel mortgage on the wood above mentioned, but that neither Hieatt nor McCord ever gave the said mortgage as promised. Defendant Miller fur-

ther alleged that the said $1,300 was advanced by him and paid to Hieatt for the benefit of the firm to enable it to carry out its contract with the city, and that the said money was actually used by McCord & Hieatt in prosecuting the work under their contract with the city; that therefore defendant Miller was entitled, in addition to his express lien under the mortgage aforesaid, to an equitable lien on the said wood; that Miller further alleged that the receiver appointed by the court sold the wood recovered by Miller's mortgage, and returned the money derived from the sale into court. Wherefore defendant Miller prayed for judgment against J. A. Hieatt and against A. D. McCord for his said debt, interest, attorney's fees, and costs, and for judgment declaring the said indebtedness a lien on the fund paid into court as aforesaid, and for an order directing the clerk to pay to Miller the amount prayed for out of said fund. The defendant J. A. Hieatt having died before the final hearing, his heirs were properly made parties and filed answers herein adopting the answer already filed by the said J. A. Hieatt.

The cause was then tried before the court without a jury, and judgment was rendered in favor of the city of Dallas against A. D. McCord for the sum of $7,345.96, that the city of Dallas was entitled to the fund in court after payment of costs and expenses of the receivership, and that the clerk be directed to pay the balance to the city of Dallas. Judgment was also rendered that plaintiff A. D. McCord take nothing against the heirs of J. A. Hieatt, and that the defendant W. F. Miller take nothing, and that as to his plea for recovery upon the notes and chattel mortgage sued upon the plaintiff and all the defendants go hence without day. Defendant Miller excepted to the judgment of the court, and filed his motion for a new trial, which was overruled. Miller then requested the court to file conclusions of law and fact, which was done, and to these conclusions he excepted and appealed.

The trial court found that the material allegations of the plaintiff's petition were true; that, by the terms of the partnership agreement between McCord and Hieatt, Hieatt was to finance the enterprise or business for which the partnership was formed, and McCord was to personally superintend the work; that, in furtherance of this agreement and the performance of the contract entered into between said partnership and the city of Dallas to cut and remove the timber from the reservoir site, Hieatt borrowed from the appellant, Miller, $1,000, and executed and delivered to him therefor the note set out and described in Miller's answer and cross-bill; that, to secure the payment of the $1,000 note so made and delivered, Hieatt executed to Miller a chattel mortgage, of the same date of said $1,000 note, upon 4,300 cords of wood which had been cut and stacked on said reservoir site under the contract of McCord &

Hieatt with said city of Dallas; that there might have been a verbal agreement between J. A. Hieatt and the said W. F. Miller to the effect that the said Hieatt would give Miller also a chattel mortgage on the same property set out in said chattel mortgage given for the $1,000 note, and also upon other wood to be cut from the White Rock Reservoir site to secure the payment of the $300 note, but no such chattel mortgage was ever executed. The court further found, however, that the firm of McCord & Hieatt was a nontrading partnership, and hence Hieatt had no authority to borrow the $1,300 from Miller, and bind the partnership of McCord & Hieatt or A. D. McCord by the execution of the notes given therefor. Appellant complains of these findings of the court, and contends (1) that the evidence shows that the firm of McCord & Hieatt was a trading or commercial partnership, and that in such a partnership one member of the firm has the legal authority to borrow in his individual capacity money for partnership purposes, and to execute a mortgage on property of the firm to secure such debts and bind the firm thereby; (2) that, if the firm of McCord & Hieatt was a nontrading partnership, still the firm and each member thereof was liable on the notes sued on by W. F. Miller because Hieatt had express authority from his partner, McCord, to execute said notes.

[1, 2] That members of trading partnerships have power to borrow money, to be used for partnership purposes, and that members of what are termed nontrading partnerships have not implied power to do so, is well settled; but as said in Randall v. Merideth, 76 Tex. 683, 13 S. W. 576, there is some difficulty in determining in all cases whether a partnership belongs to the one class or the other. It is said that, the borrowing of money and negotiation of bills and notes being incidental to and usual in the business of copartnerships formed for the purpose of trade, it follows that when a copartner borrows money professedly for the firm, and executes therefor a negotiable instrument in the copartnership name, it will bind all the partners, whether the borrowing was really for the firm or not, and whether he diverts and misapplies the funds or not, provided the lender is not himself cognizant of the intended fraud. If, however, there be mere joint ownership, or only a particular agreement to share in a single transaction, or a copartnership in a matter of business not requiring the execution of negotiable paper as the proper, usual, and convenient mode of conducting it, the copartners will not be impliedly bound by the act of one, but must give him express authority. 1 Daniel on Negotiable Instruments (5th Ed.) §§ 357, 358. In Kimbro v. Bullitt et al., 22 How. 256, 16 L. Ed. 313, the Supreme Court of the United States held that a bill drawn by a partner in the name of a firm engaged in farming,

159 S.W.—11

working a sawmill, and in trading was binding, because trading and running the mill required capital and the use of credit; but that, if the firm had been engaged in farming alone, no one partner could. have bound it by a bill or note. But it has been held that a firm engaged in manufacturing and selling of lumber, bark, etc., upon a tract of land specified and "upon any other tract which shall be purchased by said copartners," is such a trading copartnership as clothes the members thereof with authority to bind the partnership. Rumsey v. Briggs, 139 N. Y. 323, 34 N. E. 929. In Schellenbeck v. Studebaker, 13 Ind. App. 437, 41 N. E. 845, 55 Am. Rep. 240, it is held that a partner in a nontrading partnership has no implied authority to execute negotiable paper in the firm name, unless it is the common custom or usage or necessary for the transaction of the business of such firm. The rule is therefore firmly established that in the case of commercial or trading partnerships each partner has undoubted authority to pledge the partnership property, or borrow money in its name for partnership purposes, and draw, negotiate, accept, or indorse bills of exchange or promissory notes and other negotiable securities, or do any acts incident or appropriate to the firm business according to the common course and usages of such trade and business, and that the individual members of nontrading partnerships, which are usually defined to be such as are limited to a single enterprise and are not engaged in trade, have no implied authority to borrow money, and bind the firm therefor by notes given in its name, or to pledge the assets of the partnership as security for money borrowed, in the absence of proof to show the actual necessity or usage for the exercise of such power by the individual members of the firm in conducting its business.

[3] It is not essential, in order to bind the partnership, that the contract be signed by all of the partners, nor that the firm name be used. If it is signed by one partner having authority, with intent to bind the firm and so accepted and credit extended thereto, it is binding on the firm. Baxter v. Rollins, 90 Iowa, 217, 57 N. W. 838, 48 Am. St. Rep. 432, and note. In Judge v. Braswell, 13 Bush (Ky.) 67, 26 Am. Rep. 189, it is aptly said that the business of a commercial partnership being ascertained, and the nature of the contract made by a single member and the circumstances attending it being shown, the court may generally determine as matter of law whether the contract was within the scope of the implied powers of a partner. Not so, however, in reference to a contract made by a member of a nontrading or noncommercial partnership. In the latter case a partner does not generally possess power to bind the firm, and consequently the extent of his power is not fixed by the rules of law, but each case is left to be decided upon its particular facts; and in all such cases, in order to make out the liability of the firm, it ought to be shown affirmatively by the plaintiff that the partner had power to make the contract in question.

[4] In the case before us the partnership agreement was not in writing, but it was distinctly understood at the time the partnership was formed that J. A. Hieatt was to finance the enterprise, and that it was actually necessary for him in behalf of the copartnership to obtain credit and borrow money in a large amount for that purpose, necessitating the execution of negotiable paper therefor. With this understanding the firm of McCord & Hieatt made the contract with the city of Dallas to cut and remove the timber from the reservoir site. D. C. McCord, who acted for A. D. McCord, in the making and in the performance of said contract, testified that he and Hieatt went to the cashier of the Union National Bank in Dallas and laid before him the matter of borrowing $20,000, and that the cashier stated he would "fix up the papers"; that there was some delay, however, in doing this, and Hieatt paid off the men working for them out of his private funds for three payments, amounting to about $700; that this was repaid by the bank which advanced other amounts for the pay roll, all to the amount of about $4,500; that the partnership was equal as to profits or losses between himself and Hieatt; that after the Union National Bank sold out to the Commonwealth National Bank, and failed to furnish more money, Hieatt tried to arrange with other banks for money to carry on the work and business of the partnership, but was unsuccessful. He further testified that he did not know that Hieatt had borrowed money from appellant Miller, who was the cashier of the Union National Bank. So that considering the actual and recognized necessity on the part of both McCord and Hieatt, for the borrowing of a very large amount of money to enable them to carry out their contract with the city and transact the business of the firm of McCord & Hieatt, etc., the correctness of the trial court's holding that said firm was a nontrading partnership may be doubted, but, if it be conceded that such holding was correct, still we think the liability of said firm and of A. D. McCord as a member thereof, for the payment of the notes declared on by Miller, under the rules of law above stated and the facts shown by the record, very clearly appears. The evidence, in our opinion, shows without contradiction that Hieatt had express authority from his partner, McCord, to execute said notes, or shows such facts as establish beyond controversy that Hieatt had been invested by McCord with the requisite authority to create said indebtedness. This being true, whether the partnership was a trading or nontrading partnership, the firm of McCord & Hieatt and each member thereof is liable on said notes. According to the un-

disputed testimony, J. A. Hieatt, under the partnership agreement, was to have the entire' financial management of the firm business and McCord, because of his knowledge of the general contracting business was to furnish advice along those lines and look after the execution of the work of the copartnership. D. C. McCord testified, in addition to what is stated above, that he, as the represenative of A. D. McCord, was to superintend the work of clearing the reservoir site, and that J. A. Hieatt was to finance the proposition; that he and Hieatt employed a foreman of the work who was given power to employ as many men as the nature of the work demanded; that he and Hieatt gave their personal attention to the carrying out of the contract with the city; that they would go out to the work nearly every day, would compare the pay roll together, and both would go out and pay off the men, until the break came about money; that Hieatt kept the books of the firm and received the money for the wood and charcoal disposed of while the firm was attempting to carry out the contract. This witness further testified, in substance, that the work under the contract with the city continued fairly well until about three weeks before turning the contract back to the city, and that about 10 or 15 per cent. of the work had then been done, but that none of it was completed as contemplated by the contract; that during the performance of the work done he and A. D. McCord knew that J. A. Hieatt was borrowing money or had borrowed money from the Union National Bank, but knew of no other money being borrowed; that under the partnership agreement Hieatt was to finance the work and witness for A. D. McCord was to look after the execution of it; that Hieatt was to pay the men if he chose to do so; that the men were to be employed through a foreman and Hieatt was to pay all bills.

That Hieatt under the testimony shown in the record possessed the power to bind the firm of McCord & Hieatt and the members of said firm by the notes sued on by appellant we have no doubt. The authority to do so, if not in terms given by his partner, McCord, was, according to the undisputed evidence equivalent to express authority, and judgment should have been in favor of appellant against said firm and A. D. McCord for the amount of said notes. The fact that A. D. McCord did not know that Hieatt was going to and had borrowed the money from appellant does not alter the case.

The next question is: Did the court err in refusing to foreclose the chattel mortgage given by J. A. Hieatt to secure the payment of the notes declared on by appellant on the fund in the registry of the court derived from the sale by the receiver of wood cut by the firm of McCord & Hieatt under their contract with the city of Dallas? The contract between McCord & Hieatt and the city of Dallas was not performed, and, this being true, the trial court, in addition to holding that the mortgage was void because the firm of McCord & Hieatt was a nontrading partnership and Hieatt was therefore without authority to execute it and bind the firm, held that, under the terms of said contract with the city, the title to the wood in question did not pass to McCord & Hieatt, and for that reason the mortgage was of no effect as against the rights of the city. The trial court further held that the proof wholly failed to show that the wood mentioned in and covered by the mortgage was the wood which the receiver took possession of and converted into money under the direction of the court. We are of the opinion that J. A. Hieatt was clothed with authority to execute the mortgage and bind the firm thereby, but we are not prepared to say that the court erred in his construction of the contract, or in his conclusion that the evidence was insufficient to show that the wood taken in charge by the receiver was the same wood covered by appellant's mortgage. It was incumbent upon appellant to show that the wood received and sold by the receiver was the wood included in his mortgage, otherwise a foreclosure upon it or the proceeds arising from its sale was unauthorized. The trial court, as before stated, held that the evidence offered "wholly failed" to show that fact, and after an examination of the evidence we conclude that we would not be justified in disturbing that holding. At all events, we would not be warranted in saying that it was conclusively established by the evidence that the wood taken by the receiver and by him sold was the same wood covered by appellant's mortgage. Not being able to so say, the finding of the lower court upon the issue should stand.

[5] What we have said disposes practically of all the questions raised by the assignments of error, and renders a discussion of the assignments in detail unnecessary. The case seems to have been fully developed, and we see no necessity for remanding it for another trial. It is therefore ordered that the judgment of the district court, in so far as appellant Miller was by it denied a recovery for the amount of the notes sued on by him, be reversed and judgment here rendered in his favor against the copartnership of McCord & Hieatt and A. D. McCord individually for the amount of said notes, and that said judgment in all other respects be affirmed.

Affirmed in part; reversed and rendered in part.