### SMITH v. OVERTON et al. (No. 7124.)

Court of Civil Appeals of Texas. Austin.
May 11, 1927.

Rehearing Denied June 1, 1927.

1. **Limitation of actions** &#9758;127(4)—Where alleged maker pleaded non est factum, amended petition declaring on same note and alleging facts to show signature was authorized held not to set up new cause of action barred by limitations.

Where first amended petition declared on execution of note by defendants on which they obtained money from plaintiff and on refusal to pay the note, and one defendant filed plea of non est factum, second amended petition which declared upon the same transaction and alleged terms of power of attorney and other facts to show that this defendant's signature was authorized *held* not to set up new cause of action barred by limitations.

2. **Contracts** &#9758;176(1)—Construction of unambiguous written instrument is question of law.

Where a written instrument is unambiguous in terms, its construction is a matter of law.

3. **Partnership** &#9758;142(2)—Power of attorney authorizing partner to execute notes authorized signing of partner's name to partnership note so as to bind him.

Where power of attorney given by one partner gave to the other partner power to execute deeds, notes, mortgages, releases of liens, and to sign and deliver any and all necessary instruments required in the transaction of the partnership business, such other partner was authorized to sign first partner's name to partnership note so as to bind him.

4. **Evidence** &#9758;413—Testimony that partner's operations should have been confined to specified county held inadmissible to contradict written power of attorney.

Court improperly admitted first partner's testimony that as between himself and the other partner, other partner's operations should have been confined to a specified county, where the power of attorney given by the first partner to the other partner and exhibited to plaintiff stated that it contemplated many transactions would take place in the western part of Texas and also in New Mexico.

5. **Partnership** &#9758;142(2)—Member of trading partnership held bound by partner's signature of his name to note for partnership purposes, where partner signing received proceeds.

Where the partnership was a trading partnership, member thereof was bound by his partner's signature of his name to note to obtain money to be used for partnership purposes, where partner signing note received sum evidenced by note.

6. **Partnership** &#9758;145—One loaning money to member of trading partnership as such need not see that money is used for partnership.

No obligation rests upon one who loans money to member of trading partnership, professing to act for partnership, to see that the money is actually used for partnership purposes.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Action by F. R. Smith against J. C. Brasher and A. L. Overton. J. C. Brasher alleged the existence of a partnership with A. L. Overton. From a judgment denying recovery against the last-named defendant, plaintiff appeals. Reversed and rendered.

L. H. Betts, of Kansas City, Mo., for appellant.

Whitehurst & Whitehurst, of Dallas, for appellees.

BLAIR, J. [1] Appellant F. R. Smith sued appellees J. C. Brasher and A. L. Overton on a note for $2,000, dated April 3, 1920, payable May 3, 1920, to the National Bank of Commerce of Fort Worth, Tex., signed, "J. C. Brasher, A. L. Overton, by J. C. Brasher," and indorsed, "F. R. Smith," alleging that appellees received the money on the note; that appellant as accommodation indorser paid the note at maturity to payee; and that therefore appellees were each liable to him for the note with 10 per cent. interest from its date. Brasher answered that he signed the note for himself and for appellee Overton by virtue of a power of attorney from Overton to him, and, further, that he and Overton as partners engaged in the business of buying and selling

---

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

oil, gas, and mineral leases procured the money on the note and invested it in partnership property. Appellee Overton answered appellant's petition by a formal answer, but made no reply to Brasher's pleadings. On October 18, 1923, appellant filed an amended original petition which alleged the execution of the note in every particular as alleged in his original petition, but changed the allegation of his indorsement of the note, and alleged that while the note was made payable to the said Fort Worth Bank and bore his indorsement, it was so executed and deposited with said bank solely for the purpose of collection; that appellees received $2,000 on the note at the time of its execution; and that he was the owner and holder of the note, which was due and unpaid. On October 4, 1924, appellee Overton filed a sworn plea of non est factum. On October 23, 1925, appellant filed a second amended petition, which alleged the same facts as to the execution and indorsement of the note as did his first amended petition, but alleged further and specifically that he paid appellees the $2,000 at the time the note was executed, and that he was the owner and holder of the unpaid note. He further alleged for the first time the terms of the following power of attorney as authority for Brasher to sign Overton's name to the note:

"That I, A. L. Overton of Dallas county, Texas, for and in consideration of the confidence I have and repose in J. C. Brasher, of the same county and state and of one dollar to me in hand paid by said J. C. Brasher do hereby constitute and appoint the said J. C. Brasher my true and lawful agent and attorney in fact, for me and in my name, place and stead, to act for and represent me in all and any transactions connected with the partnership business to be carried on by A. L. Overton and J. C. Brasher in the purchase and sale of oil, gas, and mineral leases, also in the production, refining, transporting, and marketing of petroleum and its products, or interest therein, or any royalties or, interest therein, or any land or interest therein, hereby fully authorizing and empowering my said agent and attorney in fact to make any purchases he may deem best and proper, and to make any sales he may deem best and proper, and to execute any and all deeds, notes, mortgages, releases of liens, sign and deliver any and all necessary instruments of writing required in the transaction of said partnership business; hereby ratifying and confirming any and all acts or things whatsoever done or to be done by my said agent and attorney in fact in the premises, and hereby granting unto my agent and attorney in fact full authority to do and perform any and all acts or things which I could do or perform if present and acting in person; it being contemplated that in the conduct of said partnership business many transactions will take place in the western part of Texas and also in New Mexico, and as I shall remain in Dallas county, in order to facilitate the business I deem it necessary to execute this power of attorney.

"Witness my hand this 11th day of March, 1920.

"A. L. Overton."

The above instrument was duly acknowledged.

Appellant also further alleged for the first time as authority for Brasher to sign appellee Overton's name to the note that appellees were partners engaged in the business particularly set forth in the power of attorney; that Brasher, the managing partner, exhibited to him the power of attorney and borrowed the money evidenced by the note for partnership purposes; and that if they were not partners, then Overton was estopped to deny it, because he executed the power of attorney and held Brasher out as a partner and as having authority to execute the note in suit. To this portion of appellant's petition the court sustained several special exceptions upon the ground that a new, separate, and distinct cause of action was alleged, which was barred by limitation, the note having matured more than four years before the second amended pleading was filed.

The action of the court sustaining these special exceptions is clearly erroneous, because each amended pleading declared upon the same transaction, that is, the execution of the note by appellees on which they obtained the money evidenced by it from appellant and refused to pay the note, and evidence of the authority of Brasher to sign Overton's name specifically pleaded by the amendment could have been introduced under the general allegations in each amended pleading. The fact that by the amended pleadings filed in answer to a plea of non est factum appellant alleged the evidence or facts upon which he intended to rely to prove that Overton's name was properly signed to the note did not set up a new cause of action. Phœnix Lbr. Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707; Fuller v. El Paso Times Co. (Tex. Com. App.) 236 S. W. 455. The trial court must have realized the error, for it admitted full proof of the execution of the power of attorney, as well as proof of the partnership referred to in the power of attorney, and we will pass on to a consideration of the merits of the case.

At the conclusion of the evidence the court sustained appellant's request for an instructed verdict against appellee Brasher for $3,428.32, with 10 per cent. interest from date of judgment, but refused a like request for an instructed verdict against appellee Overton, and, over appellant's objections, submitted the following special issues to the jury, which they answered as indicated:

"1. Was it the purpose and intention of the defendant A. L. Overton to authorize and empower J. C. Brasher to borrow money and sign

the name of A. L. Overton to the note in question at the time of the execution of the power of attorney, introduced in evidence in this case? Answer: No.

"2. Was the defendant J. C. Brasher authorized and empowered by the power of attorney introduced in evidence to borrow money from plaintiff or any one else, and to execute the note in question, and to sign the name of defendant Overton to said note?' Answer: No.

"3. What amount of money, if any, did the plaintiff give to defendant J. C. Brasher at the time the note in question was executed by defendant Brasher to plaintiff, J. R. Smith? Answer: $2,000.

"4. If you have answered that the plaintiff did give to defendant J. C. Brasher any sum of money at the time the note in question was executed, then please state what sum, if any, of the money so borrowed, if any you have found to be borrowed, was used in the partnership business between the defendants Brasher and Overton? Answer: None."

Upon the jury's findings and numerous findings of its own the court rendered judgment for appellee Overton against appellant. We think the judgment clearly erroneous and should be reversed, and that judgment should here be rendered for appellant against appellee Overton for $3,428.32, with 10 per cent. interest from November 13, 1925, for the following reasons urged by appellant:

(1) Because power of attorney from Overton to Brasher clearly authorized Brasher to sign Overton's name to the note and to bind him thereon.

(2) Because the note shows on its face that Brasher executed it as a partnership note, and the evidence is undisputed that a trading partnership engaged generally in the purchase and sale of leases existed at the time Brasher signed the note for Overton.

(3) Because the jury found that appellant paid Brasher the $2,000 evidenced by the note when it was executed.

[2-6] We shall discuss the three questions together. The law is well settled that the construction of a written instrument unambiguous in terms is a question of law. The power of attorney set out is clear and explicit and gives to Brasher full and plenary power to purchase and sell oil leases or land and "to execute deeds, notes, mortgages, releases of liens, sign and deliver any and all necessary instruments of writing required in the transaction of said partnership business," and clearly authorized Brasher to sign Overton's name to the note in suit so as to bind him thereon. Whitaker v. Bledsoe, 34

Tex. 401; Hilliard v. Hons & Summers, 37 Tex. 717; Rogers v. Tompkins (Tex. Civ. App.) 87 S. W. 379. On the trial Overton admitted that he executed the power of attorney for the purposes stated therein and that the partnership existed between himself and Brasher as stated in the instrument. In fact, he made no effort to clarify any term or provision of the power of attorney. He did state that as between himself and Brasher, Brasher's operations should have been confined to Reeves county, Tex.; but such testimony is contrary to the very terms of the contract and should not have been admitted. The undisputed evidence shows that a trading partnership existed between Overton and Brasher and that Brasher signed the note to obtain money to be used for partnership purposes, and under this undisputed evidence Overton is bound on the note. Collins v. Cooper, 65 Tex. 460; Taylor v. Hudgins, 42 Tex. 244; Crozier, Rhea & Co. v. Kirker, 4 Tex. 252, 51 Am. Dec. 724; Randall, Sawyer & Dyer v. Merideth & Ailman, 76 Tex. 669, 13 S. W. 576; Dobie v. Southern Trading Co. (Tex. Civ. App.) 193 S. W. 195; Burnley v. Rice, 18 Tex. 481; Miller v. McCord (Tex. Civ. App.) 159 S. W. 159. The lender was not compelled to see that the money loaned was actually used for partnership purposes, and the fourth issue should not have been submitted to the jury. Miller v. McCord, supra. It is true that appellee Overton alleged fraud and collusion between Brasher and appellant, but made no proof of it and did not so much as request that the issue be submitted to the jury. The allegation of fraud was that no money was paid or intended to be paid by appellant to Brasher on the note, and that they agreed to divide the proceeds of the note when it was collected from appellee Overton. The jury's finding on issue 3 that appellant paid Brasher the $2,000 evidenced by the note necessarily absolved appellant of any fraud in that connection, and upon the finding and the undisputed evidence the trial court should have rendered judgment for appellant against appellee Overton in like manner as was rendered against Brasher.

We therefore reverse the trial court's judgment and here render judgment for appellant against appellee Overton for $3,428.32, with interest thereon at the rate of 10 per cent from and after November 13, 1925. Armstrong v. Hix, 107 Tex. 194, 175 S. W. 430; Stark v. George (Tex. Com. App.) 252 S. W. 1053.

Reversed and rendered.