ALBERT T. BURNLEY v. WILLIAM M. RICE AND OTHERS.

It sufficiently appears from the evidence, that Love (by whom the debt sued for was contracted) and the plaintiff in error, Burnley, were joint owners and partners in the proprietorship and carrying on of the plantation.

He contracted the indebtedness in question on account of, and to carry on the business of the copartnership; and pledged the partnership credit and effects for payment.

But it is said Love exceeded his authority in contracting this debt, and his co-partner is not bound for its payment, because cotton had been previously cultivated upon the plantation, and this debt was contracted in preparing for and carrying on the cultivation of sugar, and that there is no evidence that Burnley consented to the change in the business of the partnership. If it had appeared that the partnership articles or agreement restricted their operations to the cultivation of cotton, when that ceased, it might have been contended that the partnership, and consequently the power of one partner to bind the firm was at an end. But as it does not so appear, it is a question of the continuance of partnership; and evidence sufficient to establish a continued partnership, is sufficient to charge the members with the obligations incurred by the firm

The silent acquiesence of Burnley, after he must have known of the change of cultivation; the fact that he suffered the reputation of their partnership to continue; his failure to produce, at the trial, the articles of partnership, or any evidence to show that the managing partner had exceeded his authority, except the mere fact that cotton had been previously cultivated, or any evidence that he had ever disapproved of the change, are cogent circumstances in support of the conclusion of the jury, that the change was made by his authorization and express consent. The evidence was sufficient, *prima facie*, to warrant that conclusion, unless there had been something shown to the contrary.

See this case as to the course necessary for a partner to pursue, in his defence, where he claims that the plaintiff and his co-partner have knowingly mixed in the same account (sued on) against the partnership, transactions for the individual benefit of his co-partner and transactions for the benefit of the partnership.

Where suit is brought upon an account, which is referred to as part of the petition, and the plaintiff has a verdict and judgment on proof of the acknowledgment of a certain amount due, it cannot be objected for the first time in this Court, that the account was not filed or produced at the trial.

A contract on partnership account, and on the joint credit of the partners, is not the less binding on all the partners, because made in the individual name of one of the partners.

The power of one partner to bind the firm, by contracts made by him within the scope of the partnership business is not confined to commercial partnerships.

Quere, whether where it appears from the record, that the cause was submitted upon special issues to the jury by consent, the inference is that other issues were waived, notwithstanding there is a bill of exceptions showing that, "upon the trial," another issue was proposed by one party and overruled by the Court. Such other issue in this case related to a matter which was not in litigation.

Error from Brazoria. Tried below before the Hon. Nelson H. Munger.

On the 29th of July, 1841, James Love conveyed to Albert T. Burnley one undivided half of his plantation in Brazoria county, and one half of all the slaves, stock of every description, farming utensils and everything attached to and belonging to the plantation; "it being intended by this instrument to invest the said Burnley with one equal undivided half, so as to make him a full and equal partner in the plantation." Burnley resided out of the State. Love resided at Galveston, and superintended the plantation and managed its business. In 1846 Love gave a deed of trust on the whole property, to secure his note for $15,000 to N. A. Ware, payable ten years after date, with interest at twelve per cent. per annum, payable annually, with power to sell and discharge the whole debt in case of failure to pay the interest punctually. In 1849, Love gave a deed of trust as follows:

The State of Texas, County of Galveston: This indenture, made this 17th day of February, A. D. 1849, between James Love of the county of Galveston and State of Texas, of the first part, and Alfred F. James of the county of Galveston and State aforesaid; witnesseth that, whereas the said James Love is now indebted to William M. Rice and Charles W. Adams, merchants and partners in trade, doing business in the city of Galveston under the firm, name and style of Rice, Adams &

Burnley v. Rice.

Co., in the sum of six hundred and twenty-four 85-100 dollars, and whereas the said Rice, Adams & Co., at the instance and request of the said James Love, have agreed and contracted with the said James Love to furnish and advance to the said James Love all the supplies necessary for the use of his family, and for the use of the plantation on Oyster Creek, in Brazoria county, owned jointly by said James Love and A. T. Burnley; and whereas also the said Rice, Adams & Co., at the instance and request of the said James Love, have agreed that they will accept such drafts as said Love may draw on them for the necessary amount to purchase the machinery and apparatus, to be-propelled by horse power, necessary for making sugar, and for the materials necessary to be purchased for the construction of a sugar house, all for the use of said plantation ; the whole of which advances and acceptances not to exceed the sum of four thousand dollars, without the consent of said Rice, Adams & Co., and none of said drafts to be made payable before the first day of January, 1850 ; and whereas one N. A. Ware now holds a deed of trust upon the premises and most of the property hereinafter conveyed, bearing date the 9th day of April, 1846, to secure to said Nathaniel A. Ware the sum of fifteen thousand, five hundred and thirty-one dollars, the annual interest on which sum is payable on the first day of February in each and every year ; and it being agreed and understood by and between the said James Love and the said Rice, Adams & Co., that they, the said Rice, Adams & Co., shall have the right, in case they deem it necessary or proper for the protection of their own rights and interests, so to do, to pay off and discharge any instalment of interest on said debt, which may have become due and payable, according to the tenor and effect of said deed of trust, and have and hold the amount of such interest, so paid, as a debit and claim against the said James Love, and, the said James Love being willing and desirous to secure to said Rice, Adams & Co. the payment of the debt above mentioned, as now due, as also to secure to them the

prompt payment of all such advances of family and plantation supplies as they may furnish and advance, as hereinbefore contemplated, and also to secure to them the payment of all such sums as they may advance on account of any drafts they may accept for the said Love, and also to secure to them the payment of all such sums as they may advance for the payment of interest on said debt, so secured to said Ware by deed of trust as aforesaid, as well as the payment of all the usual and proper charges of commissions and interest for all such advances and acceptances, all of which payments are to be made by the said James Love to the said Rice, Adams & Co. on, or before, the first day of April, 1850. Now this indenture witnesseth, that said James Love, for and in consideration of the premises, and for the further consideration of ten dollars to him in hand paid by the said Alfred F. James, the receipt whereof is hereby acknowledged, has granted, bargained and sold, and, by these presents does grant, bargain, sell and convey to the said Alfred F. James, his heirs and assigns, one undivided half of all the following described property, real and personal, to-wit, &c.:

Here followed a description including the plantation, slaves, stock, and all the personal property belonging to the plantation, with a power to sell in the usual form.

At same time Love gave a deed of trust as follows : The State of Texas, County of Galveston : Whereas Charles W. Adams, who contracts for himself and partners. composing the mercantile firm of Rice, Adams & Co., of the city of Galveston, has this day contracted with James Love, who contracts for himself and A. T. Burnley, joint owners and cultivators of a certain plantation on Oyster Creek, in the county of Brazoria, in manner following, to-wit : the said Adams, for himself and partners, engages and agrees to furnish said plantation, belonging to said Love & Burnley, with all supplies for the same, as the same may be ordered by the said Love on said firm, payable on or after the first day of February, 1850, but not sooner,

for the purchase of machinery for making sugar, to be propelled by horse power, and of the necessary materials for the erection of a sugar house on said plantation, to be built of wood, the supplies to be furnished and drafts not to exceed the sum of four thousand dollars in all, unless said Rice, Adams & Co. choose to extend the same ; and whereas said Love, in order to secure the said Rice, Adams & Co., the prompt payment of the sum of six hundred and twenty-four 85-100 dollars, now due and owing to said Rice, Adams & Co. by said Love, as also to secure the prompt payment of such supplies and acceptances above contracted, on or before the first day of April, 1850, has this day conveyed, in trust to Alfred F. James, trustee, all of said Love's undivided one-half interest in and to said plantation, slaves, stock and other personal property on said plantation, and has engaged and does hereby agree, for himself and said A. T. Burnley, to pay to said Rice, Adams & Co. the customary commissions for said acceptances, with interest at ten per cent. per annum on the amount of advances made by them for said plantation, or of supplies furnished the same, and to consign to said Rice, Adams & Co. the entire crop of said plantation, immediately on the same being ready for market ; said crop to be disposed of by said Rice, Adams & Co. in the manner they may deem most to the interest of each of the contracting parties ; for all which business said Love agrees to pay said Rice, Adams & Co. the customary commissions and charges ; and the said Love, for himself and the said A. T. Burnley, in order further to secure the said Rice, Adams & Co. on the said first day of March, 1850, the full and prompt payment of said sum of six hundred and twenty-four 85-100 dollars, now due, and of the supplies and acceptances herein before contemplated to be given and advanced by said Rice, Adams, & Co. to said Love & Burnley, together with all interest, commissions and charges on said business, in consideration of the premises, and the sum of one dollar to said Love in hand paid by said Rice, Adams & Co. hereby, for himself and said Burn-

ley, mortgages and assigns to said Rice, Adams & Co., all the crops of cotton, sugar and molasses growing, or to be grown, upon said plantation, as also the machinery and other personal property, which is to be hereafter purchased for said plantation ; and this mortgage and assignment to be and remain in full force and effect against all subsequent crops to be raised on said plantation, until all the indebtedness of said Love, on the first day of April, 1850, to said Rice, Adams & Co. be fully paid and discharged. To all of which the said Adams, for himself and partners, and the said Love, for himself and Burnley, bind themselves, their heirs, executors and administrators each to the other. In witness whereof the said James Love and Charles W. Adams hereto set their names and scrawls, in lieu of seals, this 17th day of February, A. D. 1849.

On the 12th day of April, 1852, there was a sale under the deed of trust to secure the debt to N. A. Ware. The sale embraced everything in the terms of the deed of trust, and brought less than the amount due Ware, said Ware being the purchaser. On the 21st of April, 1852, Ware sold to Sharp.

On the 12th of November, 1852, this suit was commenced by William M. Rice and others composing the firm of Rice, Adams & Co., against the plaintiff in error and James Love, for a balance of account for goods sold and delivered, advances, acceptances, commissions, and interest at ten per cent. per annum, for account of the plantation. in the ownership and cultivation of which it was alleged they were partners. Ware, Sharp and the trustees in the several deeds of trust were made defendants, and rights of lien were claimed by plaintiffs, as against those parties, which are not now important. The petitition detailed all the facts as hereinbefore stated ; made all the deeds of trust part thereof ; and stated the sums total of the account, and referred for particulars thereof to the account itself as annexed to and made part of the petition. It may as well be here stated that the account no where appeared in the transcript, nor any ob-

jection on account of the failure to annex it, or introduce it in evidence.

Burnley demurred ; denied all and singular &c.; and denied that he authorized Love to act as his agent in making the deed of trust to Rice, Adams & Co., or in contracting the debt to secure which the same was given, but on the contrary, expressly declined and refused to contribute to the expenses of the plantation in any manner during the years in which such debt was contracted by the said Love, of all which the said firm of Rice, Adams & Co., had due notice, and relied on the said Love for the discharge and payment of the said debt &c.

In addition to the facts hereinbefore stated, as to which there was no real controversy, the evidence was as follows : Thomas C. Nelson testified that he was acquainted with Love and the plantation, mentioned in the petition ; that he worked on the said plantation, setting sugar kettles &c., from early in August, 1849, until the latter part of November in the same year ; that Love frequently admitted, during that time, that the plantation was owned and cultivated by himself and Burnley in partnership ; that such was the general reputation in this county. The plantation was usually spoken of as Love & Burnley's plantation ; that witness looked to Love & Burnley for his wages, and considered them both as responsible to him therefor ; that Love & Burnley dealt generally with workmen on the place as partners ; that Love repeatedly admitted that he had made a contract with Rice, Adams & Co. to furnish supplies for the plantation as well as a sugar mill, and materials for a sugar house ; that while witness was on the plantation, in 1849, plantation supplies and materials for a sugar house and a sugar mill were received at the plantation and also sugar kettles, and that Love frequently spoke of their supplies, materials, mill and kettles being furnished by Rice, Adams & Co. ; that the mill was a horse mill worth about $350 ; that the lumber, lime, shingles and other materials furnished, were worth at least $1000 ; that witness' bill, which amounted to some $300,

was paid by Rice, Adams & Co., in the presence and at the request of Love, and that Mr. Adams, of said firm, remarked at the time, in Love's presence, that the plantation was indebted to the firm of Rice, Adams & Co. over $10,000 ; that the bills of other workmen on the plantation were paid by Rice, Adams & Co., as admitted by Love to witness ; that there were three or four workmen on the place, all the time witness was there, whose wages, as stated by Love, were $3 per day each ; that witness has been frequently on the plantation since the sale to Sharp, and was there but a week or two ago, when the sugar mill, sugar kettles, and sugar house in question were on the plantation, and Sharp was offering the mill for sale. That he did not know Mr. Burnley, nor his place of residence ; that Burnley was not present during any of the conversations between witness and Love ; that the plantation was cultivated in cotton, he supposes, up to the time he went on the same, in 1849, as there were no sugar works on the plantation at that time.

John B. Jones testified that he was well acquainted with the defendants, Love & Burnley ; that sometime in 1842, he conversed with Burnley about the said plantation and talked with him repeatedly on the subject since that time. Such conversations, witness thought, might have taken place as late as 1848, '49, or '50, and possibly since the institution of this suit, but is not confident ; that in all conversations on the subject, Burnley spoke of himself and Love as being partners in the ownership and cultivation of the plantation, and spoke of Love as the acting, managing partner in conducting and controlling the plantation ; that Love and Burnley were generally reputed to be partners in the plantation, and did business in that capacity ; that the plantation was originally a cotton plantation, and believes that it was changed to a sugar plantation in 1849.

Acknowledgment of Love as follows :

Galveston, 16th August, 1851.    Messrs. Rice, Adams & Co. Present.    Gentlemen : I find your account current of 15th

Burnley v. Rice.

May, showing a balance in your favor of $5609 47, say five thousand six hundred and nine 47-100 dollars, against the plantation correct, and carried this balance forward to your credit.        Yours, &c.,                JAMES LOVE.

The plaintiff having rested his case, defendant called F. M. Jackson, who testified that he had known the plantation in question since 1837 ; that it was a cotton plantation until 1849 ; that then it was changed to a sugar plantation ; that the cost of such a change is very great ; varies from $15,000 to $20,000 for steam improvements ; on his own plantation it was about $25,000, and his plantation and force are smaller than the plantation in question and the force on it ; that witness' mill is a steam mill, and that he had to buy two engines ; that the change could be made for much less for horse mills ; that neither Love nor his family resided on the plantation ; that he never saw Burnley. The business of sugar making was a new and experimental one in Texas at the time Love went into it ; knew but two men in the business at the time ; witness resided only four miles from Love's plantation.

James H. Bell, for defendants, testified that he was well acquainted with Burnley ; had seen him in the country in 1848, and not subsequently until about 1854 ; could not say that Burnley had not been here in the meantime, nor would witness have known the fact if Burnley had visited the country.

Defendants then read that part of the deed from Love to Rice, Adams & Co,, by which the plaintiffs were to furnish Love with all his family supplies, and for which the said deed was given, as well as for other things.

Instructions asked by plaintiffs :

1st. That contracts made by one partner, if within the scope of the regular partnership business, are binding upon his copartners.

2d. That admissions of one partner as to the indebtedness of the partnership, are competent evidence of the fact and amount of such indebtedness.

3d. That general reputation, the admission of both partners and the fact that persons hold themselves out to the public as copartners, and transact business as such, are competent evidence of the existence of a partnership.

4th. That, if the contract stipulates for interest at ten per cent., that is the rate at which the interest must be computed to ascertain the amount of the indebtedness.

5th. That, if the jury find that Love was the managing partner, and had the control of said plantation, that fact is presumptive evidence that he was authorized to raise such crops as the plantation was best calculated to produce, and to make such changes in the crops and cultivation of the plantation as he might deem expedient and proper, and, in the absence of all rebutting testimony such evidence is conclusive.

2d, 3d and 4th given, others refused.

(Signed by the Judge.)

The following instructions were asked by Burnley, and refused :

1st. If the jury believe from the evidence, that Love & Burnley were partners and joint owners of the plantation for the cultivation of cotton, and if they also believe from the evidence that Love changed from the cultivation of cotton to that of the cultivation of sugar cane, and by said change of business, incurred and contracted debts and expenditures, which would not be necessary or requisite in the cultivation of cotton, to subject the defendant Burnley to contribute or pay such indebtedness, they, the jury, must find from the evidence that Burnley authorised such a change of business, and authorized the said Love to contract for and create such debts.

2d. If the jury believe from the evidence that Burnley did not authorize Love to make the debt set forth in the plaintiff's petition, they must find for Burnley.

3d. If the jury believe from the evidence, that the plaintiff knew that Love was changing the business of the plantation, and if they further believed that Burnley did not authorize

such a change of the business of the plantation, then the jury must find for Burnley.

4th. If the jury believe that Love & Burnley were partners in one branch of business, or for one given object, in order to charge one of said parties for a different business, or a different object, they must be satisfied from the evidence that such party authorised the same.

5th. One partner cannot bind another partner for a transaction different from that embraced in the copartnership, or a transaction outside of the ordinary scope of the business of the partnership.

6th. In order to charge Burnley for any supplies furnished, or debts contracted for the support of Love's family, the jury must find from the evidence that Burnley authorised the same.

Upon special issues submitted by agreement of counsel, the jury found (in addition to the facts stated as not really contested, and others as to rights of other parties, not now important,) that Love and Burnley were partners in the ownership and cultivation of the plantation at the time when the debt sued for was contracted ; that the debt was contracted by Love as the managing partner, for the joint benefit of Burnley and himself, and for the use and benefit of the plantation ; that the amount of the debt at the present time was $8,156 48 ; that Burnley expressly authorised Love to bind him for the expenses and debts incurred by Love in changing from the business of a cotton plantation to that of a sugar plantation ; that Burnley did not expressly disapprove of the change made in the cultivation of the plantation by Love ; and that Burnley had notice of the change, and expressly ratified such change from the cultivation of cotton to sugar.

Upon this verdict, there was judgment for the plaintiffs for the amount found, against Love & Burnley. Motion for new trial overruled, &c.

There was a bill of exceptions as follows :

Be it remembered that upon the trial of the above cause, A.

T. Burnley, by his attorney, moved the Court to present to the jury the following issue, viz. : Did the defendant, A. T. Burnley, authorize the said James Love to contract for his (Love's) family supplies, and to make Burnley liable therefor? but the Court refused to give the said issue to the jury, to which ruling of the Court the defendant's excepted, &c.

*Allen & Hale*, for plaintiff in error.    I. The Court below erred in refusing to instruct the jury, that one partner could not bind the other in matters out of the scope and object of the partnership.    The finding of the jury must be materially influenced by their understanding of the general powers of partners, and it is quite evident that they found that Burnley assented to the change in the business simply because they supposed that one partner could bind the other in any matter ; for there was no testimony whatever of such assent, as an independent fact. Decided cases go to the length of holding that a partner cannot be bound by the acts of another partner, done out of the course of the partnership business, unless by his express assent; and that such assent will not be implied by his silence.    (Livingston v. Roosevelt, 4 Johns. R. 251, 255 ; Sutton & McMickle v. Irvine, et al., 12 Serg. & R. 13, 15 ; Merean v. Mack, 10 Wend. R. 463.)    And, indeed, the rule that one partner can bind the other, only extends to cases of commercial partnership.   (Hedley v. Bainbridge, 3 Ad. & Ell. N. S. 316.)

    II. The Court below also erred in refusing to allow the defendant Burnley, to put as an issue to the jury, the question, whether Burnley authorized Love to contract debts for Love's family supplies.    It appeared by the deed of trust given to Rice, Adams & Co., that one class of expenses contemplated was the furnishing supplies to Love's family, and this issue was certainly proper to go to the jury.    An account stated, does not preclude the parties from disputing the correctness of the items.    (Thomas v. Hawkes, 8 Meeson & Welsby, 140.)

    III. The Court below also erred in refusing to grant the

motion for a new trial. The jury had manifestly found against the evidence, in respect to the existence of a partnership; to the existence of any indebtdness as against Burnley; and to the express authorization by Burnley of the change made by Love in the partnership business, and of the expenses thereby incurred.

There was no evidence of partnership; mere reputation is not sufficient; nor does the admission of one person as to the existence of a partnership with another, bind the other. (Porter v. Wilson, 13 Penn. State R. 641; Lea v. Price, 13 S. & M. 636; 7 Wend, 216; 9 Watts, 22.)

Part owners are not partners. (Collyer on Partnership, Sec. 437; Lawrence v. Dale, 3 Johns. Ch. 23, 32; 4 Johns. R. 265; Hopkins v. Forsyth, 14 Penn. State R. 35, 38.)

Besides, Love does not in any part of the transaction act in behalf of a partnership. He does not use the partnership name or profess to contract debts as a partner; he signs his own name to all the instruments, and only assumes to act for Burnley to the extent of pledging the entire crop. The indebtedness is always described as due by Love alone; and he alone undertakes to pay it. (Rogers v. Batchelor. 12 Peters, 233.)

Again; there was no proof that there was any indebtedness on the part of Burnley. Besides the views already stated, we would call the attention of the Court to the fact that a large proportion of the advances to be made by Rice, Adams & Co. to Love, was for the individual debts of the latter. There was first $624 due by Love originally; next, the supplies to his family; next, the interest on his debt to Ware; and last, the cost of the sugar mill and other articles necessary in the change from cotton to sugar, which appears to have been Love's own venture. Now it is unnecessary to say that for these private debts, Love could not bind Burnley. (Rogers v. Batchelor, 12 Peters, 217, 221, 233.)

And to establish any indebtedness at all in a suit on an account stated, the account should be produced, not only because

it is the consideration of the promise to pay, and must there-fore be proved to exist, (8 Mess. & Wcl. 140 ;) but in order that the items may be examined and the defendant have the opportunity to disprove the correctness, if necessary. This salutary rule has, in effect, been established by this Court, in Matossy v. Frosh, 9 Tex. R. 613. And we refer also to Heath v. Samson et al. 2 B. & Ad. 294. In the present case although the account is declared on, it was not produced on the trial, but the only proof as to the debt was the acknowledg-ment by Love of the correctness of the balance. This alone, without proof of the antecedent consideration, the foundation of the promise implied by it, was a *nudum pactum*.

*Sherwood & Goddard*, for defendants in error.

WHEELER, J. It sufficiently appears by the evidence, that Love and the plaintiff in error, Burnley, were joint owners and partners in the proprietorship and carrying on of the planta-tion. Love was the acting and managing partner, having the sole superintendence and management of the business of the co-partnership. He contracted the indebtedness in question on account of, and to carry on the business of the co-partner-ship ; and pledged the partnership credit and effects for pay-ment. This, in short, is substantially the case which the record presents ; and it would seem that there cannot be a question as to the law arising upon such a state of case. Unquestiona-bly the debt thus contracted by the one partner, for the benefit and upon the credit of the firm, is the debt of the firm, and binding upon the other partner. But it is said Love exceeded his authority in contracting this debt, and his co-partner is not bound for its payment ; because cotton had been previously cultivated upon the plantation, and this debt had been con-tracted in preparing for and carrying on the culture of sugar, and there is no evidence that Burnley consented to the change

in the business of the co-partnership. To this it is a sufficient answer that the evidence conduced to the proof of a partner ship as well after as before the change from the cultivation of cotton to that of sugar. The parties concerned were joint owners and partners in the plantation before the change ; and there is as little cause to doubt that they were so, by their mutual consent and agreement, after the change. The evidence relates to a partnership in the carrying on of the plantation, without any especial reference to what was cultivated. The fact is, that cotton was first cultivated, and afterwards sugar ; but they still appear to have been partners, and to have held themselves out to the world as such, as well after as before the change. If the change was not within the scope of the partnership, and was not assented to by Burnley, it would certainly have justified a dissolution of the partnership. It is not to be supposed that he could have remained long ignorant of so important a change ; or that he would have silently acquiesced, if he had not approved of and assented to it. He was in the country after the change and as late, it seems, as 1854 ; and nothing is heard of an intention to dissolve the partnership, or any dissatisfaction at the change in the conduct of the business by the managing partner. If it had appeared that the partnership articles or agreement restricted their operations to the cultivation of cotton, when that ceased, it might have been contended that the partnership, and consequently the power of one partner to bind the firm, was at an end. But as it does not so appear, it is a question of the continuance of partnership ; and evidence sufficient to establish a continued partnership, is sufficient to charge the members with the obligations incurred by the firm. The silent acquiescence of Burnley, after he must have known of the change of cultivation ; the fact that he suffered his co-partner still to carry on the business, and contract debts upon the credit of the firm, without objection ; that he suffered the reputation of their partnership to continue ; his failure to produce at the trial the ar-

ticles of partnership, or any evidence to show that the managing partner had exceeded his authority, except the mere fact that cotton had been previously cultivated, or any evidence that he had ever disapproved of the change, are cogent circumstances in support of the conclusion of the jury, that the change was made by his authorization and express consent. The evidence was sufficient, *prima facie*, to warrant that conclusion, unless there had been something to show to the contrary.

There can be no question of the sufficiency of the evidence to establish the fact and amount of the indebtedness of the firm. " The acknowledgment of one partner, during the continuance of the partnership, of a debt, as due by the partnership, will amount to a promise, binding on the firm." (Story on Part. Sec. 107.) There was no occasion for the plaintiff to produce the original account ; because it was not called for by the defendants ; it had been rendered and stated ; and was probably in the possession of the defendants, and might have been produced by them, if they had seen proper to contest any of the items of the charges. At least they should have called for its production upon the trial, if they would take advantage of its non-production. There are reasons why a negotiable note sued on, should be produced upon the trial, which manifestly have no application to an account.

It is objected that Burnley is not bound by the contract by which his co-partner sought to bind him, because they are described therein as "joint owners and cultivators," and one joint owner, merely as such, has no authority to bind the other joint owners. Where two persons jointly purchase a plantation to be cultivated by them for their joint and mutual profit, I apprehend, the community of interest, business, responsibility and profit, would constitute them, not only joint owners, but partners also ; and that it sufficiently appears that the intention was, in this instance, to contract in that character. It is in proof that they were partners. The contract was made on

Burnley v. Rice.

the partnership account, and on the joint credit of the partners and this was sufficient to bind them, though the acting partner, had contracted in his individual name, instead of the names of both. (1 Parsons on Con. Book 1, Ch. XII, Sec. XI ; Story on Part. Sec. 243.)

The power of one partner to bind the firm, by contracts made by him in the name, and for the benefit of the firm, is not confined to commercial partnerships. (Id. Sec. 81, 82.)

There manifestly was no error in refusing instructions asked by the defendant ; or in refusing to submit to the jury the issue proposed by him. Special issues of fact were, by the agreement of the parties, submitted for the finding of the jury ; and the finding of those issues, with one or two exceptions, upon which proper instructions were given, involved no question of law. The jury were not required or permitted to apply the law to the facts but were only to find the facts, the Court reserving the application of the law to the facts so found. There manifestly would have been no propriety in giving the instructions proposed, and they were rightly refused. The issue tendered by the defendant, proposed an inquiry into a matter not in litigation. Besides, the parties had agreed upon the issues, and neither had a right to insist upon having others submitted. There is no error in the judgment, and it is affirmed.

Judgment affirmed.