DOBIE et al. v. SOUTHERN TRADING CO. OF TEXAS et al. (No. 8521.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 10, 1917. Rehearing Denied March 17, 1917.)

1. PARTNERSHIP ☞127—LIABILITY TO THIRD PERSONS—CONTRACT OF PARTNER.

Power of a partner to bind the firm by contract exists in the case of a nontrading as well as a trading partnership.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 192.]

2. PARTNERSHIP ☞132—LIABILITY TO THIRD PERSONS — LIMITATION ON PARTNER'S AUTHORITY—NOTICE.

Limitation in partnership articles on authority of partner, without written consent of copartners, to bind the firm, is not binding on third persons without notice dealing with him in a matter fairly within the scope of the partnership business.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 196.]

3. PARTNERSHIP ☞141—CONTRACT—SCOPE OF PARTNERSHIP.

Regarding a firm being bound by contract of a partner, purchase of a sawmill is fairly within the purposes and objects of a partnership organized for the express purpose of manufacturing and furnishing railroad ties.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 214–221.]

4. PARTNERSHIP ☞157(2)—RATIFICATION OF PARTNER'S ACT.

Acceptance and use of a mill by a firm is a ratification of a partner's prior purchase thereof for it, even if not within his authority, as regards firm's liability under contract.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 283.]

5. PARTNERSHIP ☞132—LIMITATION OF PARTNER'S POWER—WAIVER.

Regarding a firm's liability to third persons on contract of a member, the members may by their course of conduct waive the limitation in the articles on the power of a member to bind the firm by contract without written consent of the others.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 196.]

Appeal from Tarrant County Court; Chas. T. Prewitt, Judge.

Action by the Southern Trading Company of Texas against W. W. Hancock and others. Judgment for plaintiff, and defendants J. M. Dobie and Joe L. Hill appeal. Affirmed.

Gordon Bullitt, of San Antonio, and Lattimore, Doyle, Bouldin & Lattimore, of Ft. Worth, for appellants. J. Felton Lane, of Hearne, for appellees.

CONNER, C. J. This suit was instituted by the Southern Trading Company of Texas against W. W. Hancock and the San Antonio Lumber & Tie Company upon two promissory notes in the sum of $125 each that had been executed by W. W. Hancock, and the payment of which it was alleged had been assumed by the tie company, a copartnership composed of J. M. Dobie, Joe L. Hill, and W. A. Frisby. The plaintiff also sought to foreclose a lien upon a certain steam engine and fixtures and smoke stack which had been given to secure the notes. The trial resulted in a judgment in favor of the plaintiff in accordance with its prayer against Hancock and the members of the partnership named, with foreclosure of the lien as prayed for by the plaintiff. The defendants Dobie and Hill have appealed.

The facts out of which the controversy arises substantially are that Hancock had purchased in the market the machinery upon which the plaintiff sought to foreclose its lien, and gave therefor the two notes and mortgage declared upon. The engine and fixtures were placed in position in a lumber mill at the time owned and operated by Hancock. Afterwards Frisby, as he testifies, acting for the San Antonio Lumber & Tie Company, purchased Hancock's lumber mill, and as part of the consideration therefor assumed the payment of the notes sued upon, which notes were afterwards in due course of trade acquired by the plaintiff in this suit. The transfer of the mill property by Hancock was to W. A. Frisby; Frisby testifying that he had been directed to so accept a transfer by his copartner, Joe L. Hill. The closely contested issue presented by appellants on the trial below by their pleadings and evidence was whether Frisby was authorized to bind the partnership by an agreement to assume the Hancock notes, and appellants now insist that it was conclusively shown that he was not so authorized by the contract of partnership between the appellants and the codefendant Frisby.

We will set out such parts only of the contract of partnership as we think material for an understanding of our conclusions. It recites, in substance, that Joe L. Hill had the assurance of securing a contract to furnish ties for the building of the S. A., R. & M. Railroad, and that it was desired by him to secure the assistance of J. M. Dobie and W. A. Frisby; Dobie to render such financial aid as might be required to carry out the contemplated contract, and to further make all necessary bond or bonds required to secure the contract. It was further recited that Hancock and Frisby had already made

contracts for timber to manufacture ties, and by the terms of the contract Frisby agreed to give all of his time and energies necessary to superintend and see to the management and making and shipping of ties, and agreed to keep all necessary records showing the output, etc. By the terms of the partnership agreement Dobie agreed to furnish the money or credit which should be necessary to properly conduct the said business "to be furnished whenever the same shall be required by the said Joe L. Hill to pay necessary expenses in securing timber for the making of said ties, and such other expenses as may be necessary to enable the said Hill to carry out his contract with the said railroad company." It was further provided that the business should be conducted "in the name of the San Antonio Tie Company," and that the net proceeds of the business should be equally divided between the parties to the partnership agreement. The following further provisions are especially important, to wit:

"That no checks shall be drawn or vouchers issued unless signed by at least two parties to this agreement, * * * and neither party shall create a debt or obligation against the firm except with the written consent of all parties."

The contract was duly signed by each of the parties named therein, and there was no verified denial of the partnership on the part of the appellants. It should be further stated that the assumption upon which the plaintiff based its right to recover from the members of the partnership was in writing and executed by Frisby contemporaneously with the transfer from Hancock to Frisby of the Hancock Lumber Mill. It reads as follows:

"Oakwood, Texas, June 30, 1913.

"To Whom It may Concern: This is to certify that we, the undersigned, San Antonio Lumber & Tie Company, of San Antonio, Texas, have assumed the entire indebtedness of W. W. Hancock on all of his sawmill machinery now situated at his mill in Leon county, Texas, the amounts being due as a balance of purchase price on said machinery, shown by statements rendered by the said W. W. Hancock and now on file in the office of the San Antonio Lumber & Tie Company.

"San Antonio Lumber & Tie Co.,
"By Wm. A. Frisby, Mgr."

No written consent on the part of Dobie or Hill to the execution of the instrument just quoted was shown, and appellants insist that it conclusively appears that the contract of partnership between them and their codefendant Frisby created a nontrading and noncommercial partnership of such restricted power as to render the act of Frisby in assuming the Hancock indebtedness of no force and effect.

[1] The distinction between a trading and a nontrading partnership is immaterial in this case in our judgment. A partnership of either kind and the members thereof may perform acts in furtherance of the object of the association. As said in the case of Burnley v. Rice, 18 Tex. 481:

"The power of one partner to bind the firm, by contracts made by him in the name, and for the benefit of the firm, is not confined to commercial partnerships."

The case is otherwise instructive. There the partnership was engaged in conducting a plantation, and the managing partner contracted a large indebtedness in changing from the cultivation of cotton to sugar. On the ground of the change the nonparticipating partner sought to escape liability, insisting that the change and consequent indebtedness was unauthorized by him. But the court upheld the judgment against the nonacting partner. It is true that in that case our Supreme Court emphasized the fact that it was not shown that the partnership agreement restricted operations to the cultivation of cotton, saying that, if it had been so shown, "it might have been contended that the partnership, and consequently the power of one partner to bind the firm, was at an end."

[2] In the case before us it was shown that by the terms of the original partnership agreement neither party thereto was authorized to "create a debt or obligation against the firm except with the written consent of all parties." This, of course, was a limitation of authority to bind the firm or nonconcurring partners for the payment of obligations such as appellees sought to enforce in this case, and, if nothing else appeared, the judgment below would have to be reversed. But it is well settled that a limitation of authority of the kind noted is not enforceable as against third parties without notice who deal with a member of the firm in a matter fairly within the scope of the partnership business. Merriman v. Fulton, 29 Tex. 98; Hatchett & Large v. Sunset Brick & Tile Co., 99 S. W. 174; Dockery v Faulkner, 101 S. W. 501; Crozier, Rhea & Co. v. Kirker, 4 Tex. 252, 51 Am. Dec. 724.

W. W. Hancock, after testifying to the sale and conveyance of his mill to Frisby, testified further that:

"I did not know of any limitations upon the authority of Mr. Frisby, if there was any. Prior to that time he had been transacting business for the San Antonio Lumber and Tie Company. I regard him as a partner and the head of the business, with full authority to transact business for the firm. I heard the testimony of Mr. Frisby that it all had been taken over by the San Antonio Lumber & Tie Company, sold to them. That statement is true so far as I know. I have never seen the property or heard of it. The letter shows they took over my obligation to the plaintiff and agreed to pay it."

No testimony contradicting the quoted testimony of Hancock is pointed out, nor have we discovered any such contradictory testimony, so that in aid of the judgment it must certainly be assumed, we think, that Hancock was without notice of any limitation whatever of Frisby's authority to make the purchase and to execute the agreement assuming the indebtedness declared upon by plaintiffs.

[3] It is further to be observed that the transaction whereby Frisby acquired the Hancock mill seems fairly within the purpos-

es and objects of the partnership between Dobie, Hill, and Frisby. The partnership contract was entered into for the express purpose of manufacturing and furnishing railroad ties. The evidence tends to show that these ties were manufactured out of timber either owned or to be purchased by the partnership, by mills such as was purchased from Hancock. The evidence tends to show that, in addition to the Hancock mill, the partnership owned two others, and Frisby testified without contradiction that the Hancock mill was purchased for the benefit of his firm, and was later formally conveyed to the firm and operated for several months, and that yet later the firm sold not only the Hancock mill, but the other two mills owned by it, thus receiving the full benefit of the Hancock purchase. On this subject Frisby testified as follows:

"Mr. Hill authorized him to purchase the property in question from Mr. Hancock and talked it over as to what kind of an agreement. In regard to this particular property they took it over for their own use and benefit. They ran it about two months, and they shut it down. The San Antonio Lumber & Tie Company would have received the benefits from it had there been any. It was regarded as company property. Took over for the benefit of the company; operated by the company for the company. Mr. Hill and Mr. Dobie, as a partnership, never at any time repudiated the contract he made with Hancock. They never objected to the contract; it was very agreeable to them. They sold the sawmill outfit and got the benefit from it, he supposed. The proceeds of the sale went to Mr. Hill and Mr. Dobie."

[4, 5] Appellants therefore are in no position to invoke as against Hancock any limitation upon the power of Frisby to agree to the payment of the Hancock indebtedness, not only for the reason that the transaction was within the scope or apparent scope of Frisby's authority, and that Hancock was without notice of any such limitation, but also for the reason that the subsequent acceptance and use of the mill on the part of the other partners in law amounted to a ratification of Frisby's act, if in any view of the case it can be said to have been unauthorized. Moreover, Frisby testified without contradiction, so far as called to our attention, or so far as we have been able to discover from the record, that the limiting clause of the partnership agreement so strongly relied upon by appellants was never in fact observed. As to this he says in his testimony that:

"If it was ever observed by either party to the contract, he did not know it. That he did not know of Mr. Dobie ever transacting any business for the company, but Mr. Hill and he [witness] did, without the written consent of either party, and it was with the common consent of all three. * * * Transactions of the nature wherein he undertook to bind the company without first obtaining the written consent of the other partners were of almost daily occurrence. That he could not recall a single instance where he was required to obtain the written consent of the other parties before he went into the contract."

We think it hardly necessary to stop to fortify by citation of authorities the proposition that it was within the power of the members of the partnership to waive, as the testimony of Frisby shows was done, the limiting clause upon the power of the members of the firm. After such waiver the limitation in no event can be held operative as against the judgment in this case. Neither Mr. Hill nor Mr. Dobie testified upon the trial nor attempted by testimony to in any way destroy the force of Frisby's evidence, and under the evidence as a whole it cannot be doubted, we think, that the judgment in favor of the appellees is fully sustained. It will be accordingly in all things affirmed.